IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:20-CV-177-FL

| | | |
|---|---|---|
| AMY JO CIOFFI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RONNIE T. INGRAM, Lenoir County Sheriff, and DAWN STROUD, Lenoir County Superior Court Clerk, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on motions to dismiss filed by defendant Ronnie T. Ingram ("Ingram") (DE 23) and defendant Dawn Stroud ("Stroud") (DE 32). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant Ingram's motion is denied, and defendant Stroud's motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action pro se on September 21, 2020, and filed the operative amended complaint on September 25, 2020, asserting claims for violations of her Second and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983. Plaintiff seeks declaratory and injunctive relief.

On November 6, 2020, defendant Ingram filed the instant motion to dismiss, arguing that plaintiff's claims are barred by the Rooker-Feldman doctrine and res judicata. Plaintiff responded in opposition on November 16, 2020, and defendant Ingram replied in support on November 24, 2020.

Plaintiff filed surreply on November 30, 2020,[1] and that same day, defendant Ingram filed a corrected reply.[2]

Defendant Stroud filed the instant motion to dismiss on December 21, 2020, seeking dismissal of plaintiff's claims on the basis of lack of standing, the Rooker-Feldman doctrine, sovereign immunity, and for failure to state a claim. Plaintiff responded in opposition on December 28, 2020, relying upon 1) a copy of her medical records and 2) various forms, documents, and correspondence.

**STATEMENT OF FACTS**

The facts alleged in plaintiff's amended complaint may be summarized as follows. On February 21, 2016, Lenoir Memorial Hospital admitted plaintiff on a voluntary basis for alcohol use. (Am. Compl. (DE 5) at 5). Four days later, Dr. Gridley petitioned for a Magistrate Custody Order, which was granted without plaintiff's knowledge. (Id.). The following day, Dr. Gridley determined that plaintiff was competent, a physician rescinded the Magistrate Custody Order, and plaintiff was released from Lenoir Memorial Hospital. (Id.).

On September 6, 2017, plaintiff voluntarily sought treatment for pneumonia symptoms at Lenoir Memorial Hospital. (Id.). Without plaintiff's knowledge, Dr. Keku petitioned for, and was granted, a Magistrate Custody Order. (Id.). At an unspecified time, a physician rescinded the Magistrate Custody Order, and plaintiff left the hospital on her own free will. (Id.).

In early October 2019, plaintiff applied for a handgun permit with the Lenoir County Sheriff's Office. (Id.). On or about October 31, 2019, plaintiff received a letter from the Lenoir County Sheriff's Office, advising that her handgun permit was denied pursuant to North Carolina General

---

[1] A surreply is not permitted under this court's local rules except with leave of court. See Local Civil Rule 7.2(f). However, where plaintiff proceeds pro se, the court, in its discretion, accepts the surreply.

[2] Defendant Ingram filed a corrected reply because his original reply incorrectly cited to North Carolina General Statute § 14-409.46(a) instead of North Caroline General Statute § 14-409.43(A). (See Mem. (DE 31) at 2, n.2).

Statute § 14-404(c)(4), which prohibits issuance of a handgun permit to anyone who has been "adjudicated mentally incompetent or has been committed to any mental institution." (Id.).

Upon receipt of the letter, plaintiff went to the Lenoir County Sheriff's Office to inquire about the denial of her handgun permit because she had never been "adjudicated mental defective." (Id.). Plaintiff talked to Major Ryan Dawson ("Major Dawson"), who claimed that plaintiff was "In the Book" and sent her to the Lenoir County Clerk of Court's office. (Id.). At the Lenoir County Clerk of Court's office, plaintiff requested documentation that she was "In the Book", and she was given a copy of the rescinded Magistrate Custody Order associated with her February 2016 hospital stay. (Id.).

On November 5, 2019, plaintiff appealed the denial of her handgun permit in Lenoir County Superior Court. (Id.). Superior Court Judge Imelda Pate ("Judge Pate") held a hearing on December 18, 2019, at which hearing Major Dawson testified that his investigation hinged upon an inquiry into the Lenoir County Clerk of Court's records. (Id. at 6). Following hearing, Judge Pate held that plaintiff was "ineligible as a matter of law to purchase a pistol as a result of having been adjudicated mentally defective or having been involuntarily committed to a mental institution pursuant to the provisions of NCGS 14-404(c)(4)." (Id.).

However, plaintiff alleges that she has never been "adjudicated" as mentally defective by a district court judge, as required by North Carolina General Statute § 122(c). (Id.). Two days later, plaintiff sent Judge Pate a certified letter stating that she had "never been adjudicated mental defective by a District Court Judge. [She had] never been Involuntarily Committed." (Id.). Plaintiff did not receive a response to her letter. (Id.).

In early 2020, plaintiff inquired as to whether she had been entered into National Instant Criminal Background Check System ("NICS") as "adjudicated mental defective." (Id.). On March

3

5, 2020, the United States Department of Justice responded to plaintiff's inquiry, informing her that she had a NICS entry, and the Lenoir County Sheriff's Department was "the controlling legal authority." (Id. at 7). When plaintiff confronted Major Dawson about the information she received form the United States Department of Justice, Major Dawson allegedly told plaintiff that "I don't answer to the [Federal Bureau of Investigations ("FBI")]; Judge Pate and I decided you shouldn't have a gun." (Id.).

Thereafter, plaintiff wrote a second letter to the FBI stating that Major Dawson allegedly failed to produce any record that plaintiff had been "adjudicated mental defective." (Id.). The United States Department of Justice responded, stating that the Lenoir County Superior Court, rather than the FBI, maintained the "prohibiting record", which was created on October 30, 2019. (Id.). Plaintiff returned to the Lenoir County Clerk of Court's office and requested the prohibiting record. (Id.). In response, plaintiff was handed the two rescinded Magistrate Custody Orders associated with her February 2016 and September 2017 hospital stays. (Id.).

Accordingly, plaintiff alleges that defendant Ingram and/or defendant Stroud "unlawfully entered a determination of 'adjudicated as a mental defective or been involuntarily committed to a mental institution' into the Federal NICS Database without a Determination by a District Court Judge; denying Due Process and in violation of procedures enumerated in NCGS 122C." (Id. at 4). Plaintiff also alleges this NICS entry violates her Second and Fourteenth Amendment rights. (Id.).

## COURT'S DISCUSSION

A.     Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from

4

the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.      Analysis

   1.      Defendant Ingram's Motion to Dismiss

      a.      Res Judicata

Defendant Ingram argues plaintiff's claims are barred by res judicata, in light of the prior action plaintiff commenced in Lenoir County Superior Court, appealing the denial of the handgun permit. When considering whether to give preclusive effect to a North Carolina state court judgment, this court must apply North Carolina law. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) ("The Full Faith and Credit Act, 28 U.S.C. § 1783, . . . requires [a] federal court to give the same preclusive effect to a state-court judgment as another court of the State would give.") (internal quotations omitted); Davenport v. N. Carolina Dep't. of Transp., 3 F.3d 89 (4th Cir. 1993)

("[F]ederal courts asked in a § 1983 action to give res judicata effect (in any of the doctrine's aspects) to a state court judgment are bound under the Full Faith and Credit statute, 28 U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect in the federal court.").

Under North Carolina law, "a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 14 (2004) (internal quotations omitted). "[T]he doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action.'" Intersal, Inc. v. Hamilton, 373 N.C. 89, 107 (2019) (citations and quotations omitted). Providing guidance on what "matters" are barred by res judicata, the North Carolina Supreme Court has explained that "while it is true that a judgment is conclusive as to all issues raised by the pleadings, . . . the judgment is not conclusive as to issues not raised by the pleadings which serve as the basis for the judgment." Id. (citing Bockweg v. Anderson, 333 N.C. 486, 492 (1993)). Moreover, a prior judgment is:

> decisive of the points raised by the pleadings, or which might properly be predicated upon them. . . . but does not embrace any matters which might have been brought into the litigation, or any causes of action which the plaintiff might have joined, but which in fact are neither joined nor embraced by the pleadings.

Id. (citing Tyler v. Capehart, 125 N.C. 64, 70 (1899)).

Here, plaintiff alleges that the "substance of [her] complaint is that [she has] been entered into the Federal NICS Database as 'Adjudicated Mental Defective or Committed to a Mental Institution' by The Lenoir County Sheriff and/or Lenoir County Clerk of Courts." (Am. Compl. (DE 5) at 4). She further alleges that "this entry into the NICS Federal Database, reflecting that there was an 'Adjudication', is wrong." (Id.). Finally, she alleges that "[i]n doing this, The Lenoir County Sheriff and/or The Lenoir County Clerk of Court have denied [her] Rights" under the Second and Fourteenth Amendment. (Id.).

6

The court cannot conclude that plaintiff's claims were raised by her pleadings in the prior action, which involved an appeal of a handgun permit denial. Importantly, plaintiff alleges that she did not discover the alleged NICS entry, which underlies her claims here, until <u>after</u> Judge Pate denied her handgun permit appeal in Lenoir County Superior Court. <u>See</u> <u>id.</u> at 6-7. Thus, the court cannot reasonably infer that plaintiff's pleadings in the prior action raised issues pertaining to the alleged NICS entry. Where defendant Ingram's res judicata defense is not clearly meritorious on the face of plaintiff's amended complaint, his motion to dismiss is denied in this part. <u>See</u> <u>Brockington v. Boykins</u>, 637 F.3d 503, 506 (4th Cir. 2011) (noting that motions to dismiss for failure to state a claim generally do not permit inquiry into the merits of affirmative defenses, unless clear on the face of plaintiff's complaint).

      b. <u>Rooker-Feldman</u>

Defendant Ingram argues plaintiff's claims are barred by the <u>Rooker-Feldman</u> doctrine. For judicial review of questions arising under federal law, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." 28 U.S.C. § 1257(a). Construing its grant of appellate jurisdiction under § 1257, the United States Supreme Court has explained that district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." <u>Dist. of Columbia Ct. of Appeals v. Feldman</u>, 460 U.S. 462, 486 (1983); <u>see</u> <u>Rooker v. Fid. Tr. Co.</u>, 263 U.S. 413, 415–16 (1923). In <u>Feldman</u>, the Court further explained that claims that were "inextricably intertwined" with a state court's decision were not subject to review in federal district court. 460 U.S. at 482 n. 16.

Construing <u>Feldman</u>'s language, the United States Court of Appeals for the Fourth Circuit previously held that a claim is "inextricably intertwined" with a state court decision if "'success on

7

the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" Shooting Point, LLC v. Cumming, 368 F.3d 379, 383 (4th Cir. 2004) (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)).  However, the Supreme Court has since clarified that the Rooker-Feldman doctrine applies in the narrow set of cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  Exxon Mobil Corp., 544 U.S. at 291. "In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments."  Hulsey v. Cisa, 947 F.3d 246, 250 (4th Cir. 2020) (citing Thana v. Bd. of License Comm'rs for Charles Cty., Maryland, 827 F.3d 314, 320 (4th Cir. 2016)).

The instant matter does not fall within the Rooker-Feldman doctrine's narrow scope because plaintiff is not complaining of an injury caused by a state court judgment.  See Hulsey, 947 F.3d at 250.  Plaintiff alleges that defendant Ingram "and/or" defendant Stroud entered her into the NICS as having been "adjudicated mental defective or committed to a mental institution" and "that this entry into the NICS Federal Database, reflecting that there was 'Adjudication', is wrong." (Am. Compl. (DE 5) at 4).  Moreover, plaintiff alleges that "this false 'Adjudication' was later presented in a NC Superior Courtroom, presided by Judge Imelda Pate, as the decisive accusatory evidence against [her]." (Id.).

Importantly, plaintiff "does not "seek[ ] redress for an injury caused by the state-court decision itself," Husley, 947 F.3d at 250 (emphasis in original), but rather for injuries caused by the defendants' alleged conduct in reporting that plaintiff had been "adjudicated mental defective" and presenting that evidence in the state court proceeding.  Even if the admission of that evidence in the state court proceeding aided in defendants' alleged violation of plaintiff's civil rights, "that does not

8

make the state court's [evidentiary] ruling the cause of [plaintiff's] injury." Id. Indeed, "[a] plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." Id. (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)).

Therefore, plaintiff's claims are not barred by the Rooker-Feldman doctrine, and defendant Ingram's motion to dismiss is denied in this part.

    c.    28 C.F.R. § 25.10

Defendant Ingram contends that "[i]n her Response, Plaintiff intimates, for the first time, that her action is not advanced under 42 U.S.C. § 1983, but instead under 28 C.F.R. § 25.10." (Mem. (DE 31) at 2). Because defendant Ingram argues that the Lenoir County Clerk of Superior Court, rather than the Lenoir County Sheriff, is the proper defendant for a claim asserted under 28 C.F.R. § 25.10, he argues that plaintiff's claims against him must be dismissed.[3]

As relevant here, "Congress enacted the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 ['the Brady Act'], to prevent convicted felons and other persons who are barred by law from purchasing guns." Sanders v. United States, 937 F.3d 316, 322 (4th Cir. 2019). The Brady Act tasked the Attorney General with establishing the NICS, which "federally licensed firearms dealers and others must use to determine 'whether receipt of a firearm by a prospective transferee would violate section 922 . . . or State law.'" Id. (quoting 34 U.S.C. § 40901(b)). The United States Department of Justice has promulgated implementing regulations, at 28 C.F.R. §§ 25.1-25.11, which "spell out the procedures the FBI follows in performing background checks" in the NCIS. Id. (citing 28 C.F.R. §§ 25.1–25.11).

---

[3]    The court leaves for another day decision on whether plaintiff has a direct cause of action under 28 C.F.R. § 25.10, or whether plaintiff can seek enforcement of 28 C.F.R § 25.10, under 42 U.S.C. § 1983, where these issues have not been raised by the parties. See, e.g., Smith v. Kirk, 821 F.2d 980, 984 (4th Cir. 1987) ("An administrative regulation . . . cannot create an enforceable § 1983 interest not already implicit in the enforcing statute.").

Under the implementing regulations, an individual may contest "the accuracy or validity of a disqualifying record [in the NICS] by bringing an action against the state or political subdivision responsible for providing the contested information, or responsible for denying the transfer, or against the United States, as the case may be." 28 C.F.R. § 25.10. Defendant Ingram argues that the Lenoir County Clerk of Superior Court, rather than the Lenoir County Sheriff, is the "state or political subdivision responsible for providing the contested information", relying on North Carolina General Statute § 14-409.43(a), which provides: "upon receiving notice of a determination that an individual shall be involuntarily committed, the clerk of superior court in the county where the determination was made shall "cause of the record of the determination or finding to be transmitted to the . . . NICS." N.C. Gen. Stat. § 14-409.43(a).

As an initial matter, plaintiff maintains that she is bringing this action under 42 U.S.C. § 1983, rather than 28 C.F.R. § 25.10. However, even assuming that plaintiff asserts her claims under 28 C.F.R § 25.10, her allegations, which must be taken as true at this stage, allow the court to plausibly infer that defendant Ingram, as the Sheriff of Lenoir County, is state or political subdivision responsible for providing the contested information. In particular, plaintiff alleges that the United States Department of Justice "reported that [she] indeed had an NICS entry . . . and The Controlling Legal Authority was the Lenoir County Sheriff's Department." (Am. Compl. (DE 5) at 7). Plaintiff also alleges that she has "been entered into the Federal NICS Database as 'Adjudicated Mental Defective or Committed to a Mental Institution' by the Lenoir County Sheriff and/or Lenoir County Clerk of Courts." (Id. at 4). Importantly, the implementing regulations provide that "[i]t is anticipated that most records in the NICS Index will be obtained from Federal agencies. It is also anticipated that a limited number of <u>authorized state and local law enforcement agencies</u> will voluntarily contribute records to the NICS Index." 28 C.F.R. § 25.4 (emphasis added). Since the Lenoir County Sheriff's

10

office is a law enforcement agency, it is plausible that defendant Ingram was responsible for providing the contested information.

Therefore, defendant Ingram fails to demonstrate a basis for dismissal of plaintiff's amended complaint, and his motion to dismiss is denied.

  2.  Defendant Stroud's Motion to Dismiss

    a.  Standing

It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show 1) an "injury in fact," meaning an injury that is "concrete and particularized" and "actual or imminent; 2) a "causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable" to the defendant's actions; and 3) a likelihood that the injury "will be redressed by a favorable decision." Id. at 560–61. Where a plaintiff seeks declaratory and injunctive relief, plaintiff also must "establish an ongoing or future injury in fact." Kenny, 885 F.3d at 287 (citing O'Shea v. Littleton, 414 U.S. 488, 495–96, (1974)). To do so, plaintiff's complaint must "plausibly alleg[] a real and immediate threat of repeated injury." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 455 (4th Cir. 2017) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).

Here, defendant Stroud argues that plaintiff lacks standing because she fails to allege a causal connection between her alleged injury and any conduct of defendant Stroud. According to defendant Stroud, plaintiff alleges that her constitutional rights were violated when defendant Ingram denied

11

her application for a handgun permit. Because defendant Stroud has no authority to approve or deny a handgun permit, she argues that plaintiff's alleged injury is not fairly traceable to her.

Defendant Stroud's argument in unpersuasive, where it misreads the substance of plaintiff's amended complaint. Plaintiff does not allege that defendant Ingram's denial of her handgun permit violated her Second and Fourteenth Amendment rights. Indeed, such allegation is absent from her amended complaint, and plaintiff reiterates in briefing "that [she is] not asking the Sheriff to issue [her] a gun permit as Remedial Action in [her] amended complaint." (Mem. (DE 26) at 2).

Instead, plaintiff alleges that defendant Stroud "and/or" defendant Ingram entered into NICS that plaintiff has been "adjudicated mental defective or committed to a mental institution", when a district court has not so adjudicated, in violation of her Second and Fourteen Amendment rights. (Am. Compl. (DE 5) at 4). This concrete and particularized injury[4] is fairly traceable to defendant Stroud, where plaintiff alleges that defendant Stroud allegedly made the NICS entry that underlies plaintiff's claims. The fact that plaintiff also alleges defendant Ingram made this injury is not dispositive, since the Federal Rules of Civil Procedure explicitly allow plaintiffs to plead facts in the alternative. See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count of defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

Defendant Stroud also argues that plaintiff's injury is not likely to be redressed by a favorable decision in this case because the court cannot second guess the discretionary decision of defendant Ingram to deny the handgun permit. This argument again misreads plaintiff's amended complaint. Plaintiff is not asking the court to reverse defendant Ingram's denial of the handgun permit; rather, she seeks removal of an allegedly incorrect NICS entry, which could be achieved by favorable

---

[4] The alleged injury is also ongoing, where the NICS entry is active and prevents plaintiff from purchasing a gun in the future.

decision in this case. (Am. Compl. (DE 5) at 9) (stating relief sought); (see also (Mem. (DE 35) at 5) ("I do not seek to . . . compel Sheriff Ingram to issue a pistol permit. It is my position that once the fraudulent and unconstitutionally arrived at NICS Entry is removed; my Second Amendment Rights will stand or fall on their proper legal merit.").[5]

In sum, plaintiff has standing, and defendant Stroud's motion to dismiss is denied in this part.

b.  Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Thus, the Eleventh Amendment bars suits against a state or its agencies, unless the state has waived its immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995); Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) ("Congress has made no move to impose § 1983 liabilities upon states, and North Carolina has done nothing to waive its immunity." (citations omitted)). Eleventh Amendment immunity extends to "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacities. Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995) (citing Will, 491 U.S. at 71).

However, the doctrine of sovereign immunity "does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex parte Young, 209 U.S. 123, 155–56 (1908)); see Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002). Such official capacity claims

---

[5]  Defendant Stroud's argument that defendant Ingram's denial of a handgun permit did not deprive plaintiff of due process fails for the same reason.

13

may be made against state officers who have a "special relation" to the law to be enforced. Young, 209 U.S. at 157; S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008) (holding that state officials are properly sued in their official capacities under Young when they have proximity to and responsibility for the challenged state action).

In determining whether the doctrine of Ex parte Young applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005) (quoting Verizon Md., 535 U.S. 635, 645). Moreover, the court does "not consider the merits of the plaintiff's claims; it is enough that the complaint alleges an ongoing violation of federal law." Id. (quoting Verizon Md., 535 U.S. at 646).

Here, plaintiff seeks declaratory relief "[i]n the form of The United States District Court declaring Lenoir County in violation of my Civil Rights." (Am. Compl. (DE 5) at 9). A declaration that violations of federal law occurred cannot be characterized as prospective injunctive relief, and therefore, is barred by sovereign immunity. See Green, 474 U.S. at 73-74. Such request is dismissed without prejudice.

Plaintiff also seeks injunctive relief, including: 1) that defendants cease and desist from the specific unlaw procedures surrounding this case; 2) that all federal and state databases are corrected in a manner consistent with the judgment in this case; 3) that all order and judgments associated with the entry into the NICS database be voided; and 4) that the records of the Bureau of Alcohol Tobacco Firearms and Explosives be corrected in a manner consistent with the judgment in this case. Defendant Stroud argues, without citing any case law in support, that such relief is retrospective. However, under a "straightforward inquiry", the active NICS entry, allegedly entered in violation of plaintiff's Second and Fourteenth Amendment rights, represents an ongoing violation of the United

14

States Constitution, and plaintiff's request that the entry be removed in the future constitutes prospective injunctive relief. See Constantine, 411 F.3d at 496 ("The prayer for relief requests an order expunging the failing grade from [plaintiff's] record or directing [defendant] to permit a re-examination under reasonable circumstances. . . . Accordingly, the allegations in [plaintiff's] complaint satisfy our "straightforward inquiry.'"); Antrican v. Odom, 290 F.3d 178, 186 (4th Cir. 2002) ("[R]elief sought in this case is prospective in nature and, therefore, is of the type that falls within the Ex Parte Young exception. The plaintiffs requested an injunction mandating that in the future, State officials bring the North Carolina Medicaid program into compliance with the Medicaid Act.").

Next, defendant Stroud argues that the Ex Parte Young exception does not apply because there is no "special relation" between defendant Stroud and the enforcement of the act alleged to unconstitutional. Defendant Stroud's argument would be persuasive if the gravamen of plaintiff's amended complaint was the denial of the handgun permit. However, plaintiff's claims instead focus on the alleged false entry in the NICS, and under North Carolina law, the clerk of court plays a role in the transmittal of information to the NICS. See N.C. Gen. Stat. § 14-409.43(a).

In sum, defendant Stroud's motion to dismiss on sovereign immunity grounds is granted with respect to plaintiff's claims for declaratory relief, and it is denied with respect to plaintiff's claims for injunctive relief. Such claims are dismissed without prejudice.

    c.    Failure to State a Claim

Defendant Stroud argues plaintiff fails to state a claim against her because the Lenoir County Clerk of Court plays no role in the Lenoir County Sheriff's decision to grant or deny a handgun permit. As stated above defendant Stroud misreads the substance of plaintiff's amended complaint. Plaintiff does not rest her amended complaint on defendant Ingram's denial of her handgun permit,

but rather, on the fact that defendants allegedly entered false information about plaintiff into the NICS. Unlike the decision on a handgun permit application, the clerk of court <u>does</u> play a role in the entry of information into the NICS. <u>See</u> N.C. Gen. Stat. § 14-409.43(a).

Therefore, defendant Stroud fails to demonstrate a basis for dismissing plaintiff's amended complaint, and her motion to dismiss is denied in this part.[6]

## CONCLUSION

Based on the foregoing, defendant Ingram's motions to dismiss (DE 23) is DENIED. Defendant Stroud's motion to dismiss (DE 32) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for declaratory relief is DISMISSED WITHOUT PREJUDICE on sovereign immunity grounds. Plaintiff's remaining claims are ALLOWED to proceed. The court's initial scheduling order will follow.

SO ORDERED, this the 11th day of May, 2021.

LOUISE W. FLANAGAN
United States District Judge

---

[6] Defendant Stroud also seeks dismissal of plaintiff's amended complaint under the <u>Rooker-Feldman</u> doctrine. As stated in more detail herein, the <u>Rooker-Feldman</u> doctrine does not bar plaintiff's claims, so defendant Stroud's motion is denied in this part.